UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**VICKI L. BROWN,**

       **Plaintiff,**

**v.**                                                                    **Case No:  6:12-cv-1193-Orl-31DAB**

**CVS PHARMACY, INC., HOLIDAY CVS, LLC,
CVS CAREMARK CORPORATION,**

       **Defendants.**

---

**ORDER**

This cause comes before the Court on a Motion for Summary Judgment (Doc. 32) filed by Defendants CVS Pharmacy, Inc., Holiday CVS, LLC, and CVS Caremark Corp. (collectively, "CVS" or "Defendants"); Plaintiff's response thereto (Doc. 42) and Defendants' reply (Doc. 44).

**I.**      **Background**

Vicki Brown ("Brown") worked as a "pharmacy technician" at a CVS store in Apopka, Florida, until she was terminated on November 11, 2011. Her duties included answering the phone, speaking to customers, filling proscriptions, answering questions, and generally assisting pharmacists at the store. Although Brown was born deaf in her right ear, she never had a problem fulfilling her duties at CVS. On October 20, 2010, however, Brown underwent surgery to remove a potentially cancerous lesion on her salivary gland which left her with a surgical wound on her left ear. The wound, and resulting pain, left Brown incapable of holding a phone to left ear. She retuned to CVS on November 15, 2010, but instead of speaking with customers over a handset, she used a speakerphone. This accommodation worked for some time until Brown, or someone

else at CVS, realized that sensitive customer information could be heard by other customers and employees when Brown used the speakerphone.

What happens next is disputed. Viewed in a light most favorable to Plaintiff, however, Brown discovered that she could place the handset to her temple, so that it was not directly touching her left ear. Using this method she was able to perform her duties exactly as before. Nevertheless, after she returned from her surgery, CVS ordered her to take a hearing test. She returned with the results on December 3, 2010, which indicated that she was deaf in her right ear and had normal hearing in her left. A second doctor's note also indicated the need for follow up care for pain management. On December 6, 2010, Brown was informed by a supervisor that the decision was made for her to take a leave of absence, and that "Brown couldn't work [at CVS] anymore." CVS did not attempt to discuss the situation with Brown or seek any alternative options that would have resulted in Brown keeping her position.

Brown filed this suit on August 2, 2012. The operative Amended Complaint asserts four claims for violation of the Americans with Disabilities Act, ("ADA"), 42 U.S.C.A. § 12112, the Florida Civil Rights Act, ("FCRA"), Fla. Stat. § 760.10, and the Family Medical and Leave Act, ("FMLA") 29 U.S.C. §§ 2601, et. seq. CVS now moves for summary judgment on all counts.

**II.     Standard**

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d

604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

**III.    Analysis**

    **ADA and FCRA Claims**

Plaintiff alleges Defendants discriminated against her under the Americans with Disabilities Act (the "ADA") and the Florida Civil Rights Act ("FCRA"), which prohibit employers from discriminating against employees on the basis of a disability. 42 U.S.C.A. § 12112(a). Fla. Stat. § 760.10. ADA claims and disability discrimination claims under the FCRA

are "analyzed using the same framework" and courts "consider both claims together."[1] *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). To establish a prima facie case of disability discrimination under the ADA (and FCRA), Plaintiff must demonstrate (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. *Holly,* 492 F.3d 1247 at 1256.

   *a. Disability*

The ADA Amendments Act of 2008 (the "ADAAA") expanded the definition of disability, and was intended to reinstate a broad scope of protection under the ADA. Pub. L. No. 110–325, Sec. 2, 122 Stat 3553 (2008). With respect to an individual, the term disability means: (1) a physical or mental impairment that substantially limits one or more major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such impairment. 42 U.S.C.A. § 12102(1)(A)-(B). An individual may establish coverage under any one of the three prongs of the definition of disability. 29 C.F.R. § 1630.2(g) (2).

Brown's impairment meets the definition of disability under the first prong. An impairment is a disability when it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j). What constitutes a "major life activity" includes, but is not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C.A. § 12102(2)(A). The term "substantially limits" is construed broadly in favor of expansive coverage, and shall be interpreted and applied to require a degree of functional limitation that is lower than the standard applied prior to the ADAAA. 29 C.F.R. § 1630.2(j). While not every

---

[1] The FCRA uses the term "handicap," whereas the ADA uses the term "disability."

impairment will constitute a disability, "an impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* (noting that "it should easily be concluded that . . . [d]eafness substantially limits hearing . . .").

Not only is Brown deaf in her right ear, but she has neuropathic pain in her left ear. Brown claimed her impairment has affected her ability to sleep, dress, groom, and touch anything to her ear. Brown has submitted evidence that, when taken in a light most favorable to her, suggests she has substantial limitations in several "major life activities" under the ADA, including sleeping, hearing, communicating and working.

CVS relies on two cases for the proposition that being deaf in one ear, or experiencing ear pain, is not substantially limiting. See *Mengel v. Reading Eagle Co.*, 2013 WL 1285477 (E.D. Pa. Mar. 29, 2013) (finding plaintiff who had hearing loss in one ear was not disabled under the ADA); *Petrunti v. Cablevision*, 2009 WL 5214495 (E.D.N.Y. Dec. 30, 2009) (finding plaintiff was not disabled under the ADA due to her ear pain). This case is different, however, in that Brown has both impairments—she is deaf in one ear and experiences pain in the other. The combination of the two can result in an impairment that is more severe and limiting than either impairment on its own. Accordingly, in light of the ADAAA and for purposes of summary judgment, Brown has presented enough evidence to suggest she is actually disabled under the ADA and FCRA.

### b. *Qualified Individual*

Defendants contend that Brown is not a "qualified individual" with a disability. A "qualified individual" is one who can perform the essential functions of an employment position, with or without a reasonable accommodation. 42 U.S.C.A. § 12111(8). Defendants allege

Plaintiff is not a qualified individual with a disability because she was unable to perform the essential function of using the telephone to answer customers' questions and maintain customer confidentiality. However, Plaintiff claims she was able to use the phone to fully interact with customers by holding the handset of the phone to her temple area. Brown also claims that co-workers standing beside her could not hear the caller when she did so. Therefore, a reasonable jury could find Brown was able to perform the essential functions of her job with an accommodation, and thus is a qualified individual.

*c. Unlawful Discrimination*

Plaintiff alleges Defendant discriminated against her by: (1) failing to provide reasonable accommodations; (2) forcing Brown to undergo a medical test; and (3) never engaging in the interactive process with Brown.

A plaintiff must prove the following to establish a failure to accommodate claim: (1) plaintiff has a disability within the meaning of the statute; (2) defendant had notice of her disability; (3) plaintiff could perform the essential functions of her position with a reasonable accommodation; and (4) the defendant refused to make such an accommodation. *Darwin v. Principi,* 2006 WL 5079473, *13 (M.D. Fla.). The burden is on the Plaintiff to identify a reasonable accommodation and demonstrate the accommodation allows him or her to perform the essential functions of the job. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255-56 (11th Cir. 2001). If a plaintiff cannot demonstrate a reasonable accommodation, an employer's lack of investigation into a reasonable accommodation is unimportant. *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997). An indefinite leave of absence is not a reasonable accommodation, because it does not allow a plaintiff to continue working in the present, but rather at a future and

indefinite time. *Wood v. Green,* 323 F.3d 1309, 1314 (11th Cir. 2003), *cert. denied* 540 U.S. 982, 124 S.Ct. 467, 157 L.Ed.2d 373 (2003).

Brown claims that she could perform the essential functions of her position and use the telephone by placing the phone to her temple as opposed to her ear, and CVS refused to grant such an accommodation, instead choosing to place her on indefinite leave. There is a disputed issue of material fact, however, regarding whether Brown brought this to the attention of her superiors at CVS. (Doc. 32 at 14). This is sufficient to survive summary judgment.[2]

**FMLA Claims**

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for one or more of the following: . . . (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). An employer is prohibited from interfering, restraining, or denying the exercise of, or the attempt to exercise, any right provided under the FMLA and from discharging or discriminating against any individual "for opposing any practice made unlawful" by the FMLA. 29 U.S.C.A. § 2615(a)(1), (2).

Plaintiff claims that CVS interfered with her FMLA protected leave by (1) failing to designate her doctors' visits as FMLA qualifying, (2) "informing [her] on December 6, 2010, that she could no longer work there," and (3) "after the fact, den[ying] Brown leave based upon a false leave date of December 6, 2010." (Doc. 42 at 14). Brown also claims that CVS retaliated against her when she was told "you can't work here anymore" on December 6, 2010. CVS moves to dismiss the FMLA counts because Brown is not an "eligible employee" under the

---

[2] Moreover, there is a disputed issue of material fact regarding the break down in the interactive process. CVS claims that Plaintiff failed to advise anyone about her preferred accommodation. Brown contends, however, that she was never offered such an opportunity and was instead placed on immediate leave. (Doc. 42 at 6-7).

FMLA—she only worked 1,213 hours "in the 12 months leading up to December 6, 2010." (Doc. 32).

In order to receive FMLA protections, one must be both eligible, meaning having worked the requisite hours, and entitled to leave, meaning an employee has experienced a triggering event, such as a serious health condition. *See* 29 U.S.C. § 2612(a)(1) (stating that only an eligible employee shall be entitled to FMLA leave). "The determination of whether an employee has worked for the employer for at least 1,250 hours in the past 12 months and has been employed by the employer for a total of at least 12 months must be made as of the date the FMLA leave is to start." 29 C.F.R. § 825.110(d). *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012).

CVS argues that Brown was not entitled to leave on December 6, 2010, because she worked only 1,213 hours in the previous twelve months. Plaintiff does not dispute this. Instead, she argues that the Court should not examine the twelve months prior to December 6, 2010 to determine her eligibility because Brown made an earlier request for leave on October 20, 2010. Looking back twelve months from that date, she was eligible for FMLA protected leave. In essence, Plaintiff argues that once she satisfied the eligibility requirement on October 20, 2010, she was eligible for all subsequent requests for leave related to the same condition.

At least one other court has addressed this issue and noted that "[t]he plain language of the statute and relevant implementing regulation tie the 1250 hour requirement to the time leave begins." *Adams v. Honda of Am. Mfg., Inc.*, C-2-01-0822, 2002 WL 31159307 (S.D. Ohio Sept. 19, 2002) *aff'd,* 111 F. App'x 353 (6th Cir. 2004) (citing 29 U.S.C. § 2611(2)(A); 29 C.F.R. 825.110(a)). Indeed, the statute states that eligibility is determined at the time the leave begins. Plaintiff was granted FMLA leave on October 20, 2010, for surgery. She returned on November

15, 2010, and worked until December 6, 2010, when she was placed on extended leave because of her alleged disability. Brown was not eligible for FMLA protected leave on December 6, 2010. Her interference claim with respect to that date must therefore fail.

Brown also claims that she was entitled to intermittent FMLA protected leave for post-surgical doctors' visits. There is no evidence, however, that the intermittent visits were sufficient triggering events. 29 U.S.C.A. § 2612(a)(1)(D) & (b)(1). Indeed, Brown admits that she returned to work on November 15, 2010, "without restrictions." (Doc. 42 at 5). Moreover, employees seeking intermittent leave are required to notify their employer and "attempt to work out a schedule" that does not "unduly disrupt the employer's operations." 29 C.F.R. § 825.302(f). Employers may also require that employees on intermittent leave transfer to an alternative position. 29 U.S.C.A. § 2612(b)(1). There is no evidence that Brown complied with these requirements.

Plaintiff's retaliation claim also fails. To establish a prima facie case of retaliation under the FMLA, Brown must show (1) that she engaged in statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was casually related to a protected activity. *Pereda*, 666 F.3d at 1275. There is no evidence that Brown was eligible for FMLA leave after she returned to work on November 15, 2010. Thus, she cannot show that she was engaged in any protected activity that might have prompted retaliation.[3] Even if she were eligible for FMLA leave, there is no evidence that the adverse employment action she suffered on December 6, 2010, was causally related to the exercise of her rights under the FMLA.

It is therefore,

---

[3] Although the October 20, 2010, leave was FMLA protected, there is no evidence—and Plaintiff does not argue—that the adverse action taken on December 6, 2010, was casually related.

**ORDERED** that Defendants' Motion for Summary Judgment (Doc. 32) is **GRANTED in part and DENIED in part**, as follows: summary judgment is **GRANTED** in favor of Defendants with respect to Plaintiff's FMLA claims, but **DENIED** with respect to Plaintiff's claims under the ADA and FCRA.

**DONE** and **ORDERED** in Orlando, Florida on July 2, 2013.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties